CASE NO. 4:20-CV-02584-HSG

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>PG&E CORPORATION<br>-and-<br>PACIFIC GAS AND ELECTRIC<br>COMPANY,<br><br>              Debtors | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered) |
| ANTHONY GANTNER, individually and<br>on behalf of all those similarly situated,<br>          Plaintiff/Appellant,<br>   vs.<br><br>PG&E CORPORATION, a California<br>Corporation, and PACIFIC GAS &<br>ELECTRIC COMPANY, a California<br>Corporation,<br>         Defendants/Appellees. | Adv. Pro. No. 19-03061 (DM) |

Appeal from the Order on Debtors' Motion to Dismiss
and Motion to Strike dated April 3, 2020
Hon. Donald Montali, U.S. Bankruptcy Judge

**APPELLANT'S PRINCIPAL BRIEF**

Nicholas A. Carlin
Brian S. Conlon
**Phillips, Erlewine, Given & Carlin LLP**
39 Mesa Street, Suite 201
San Francisco, CA  94129
Telephone:  (415) 398-0900

Bonny E. Sweeney
Seth R. Gassman
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908

Attorneys for Appellant

# TABLE OF CONTENTS

PAGE

I.     INTRODUCTION ................................................................1

II.    JURISDICTIONAL STATEMENT .........................................6

III.   STATEMENT OF THE ISSUES AND STANDARDS OF REVIEW.....6

IV.    STATEMENT OF THE CASE .............................................8

    A.   Factual Background ...............................................8

        1.   PG&E's Negligent Maintenance of Its Power Grid Necessitated the Public Safety Power Shutoffs .....................8

        2.   The CPUC's Role ................................................10

    B.   Procedural History ................................................11

        1.   The Complaint.....................................................11

        2.   PG&E's Motion to Dismiss and Strike Class Claims ..........12

        3.   Plaintiff's Opposition .............................................12

        4.   PG&E's Reply, the CPUC's Amicus Brief, and the Hearing....................................................13

        5.   The Bankruptcy Court's Decision and Order......................14

V.     SUMMARY OF THE ARGUMENT ........................................16

VI.    ARGUMENT.....................................................19

    A.   Legal Standards....................................................19

    B.   The Bankruptcy Court's Decision that § 1759 Preempts this Action Was Error ..............................................20

        1.   This Action Does Not Hinder or Interfere with the CPUC's Exercise of Regulatory Authority............................23

            a.   The Bankruptcy Court Did Not Properly Apply the *Covalt* Test.....................................................23

            b.   The Bankruptcy Court Failed to Properly Analyze § 1759 Preemption under *Hartwell* ..............................25

   **c.**   **The CPUC's Conclusory Assertion that an Action Interferes with its Regulatory Authority Carries No Weight** ....................................................**26**

   **d.**   **Whether PG&E Met the CPUC's Minimum PSPS Standards is Irrelevant** ................................................**27**

  **2.**   **This Action Is in Aid of, and Complements, the CPUC's Jurisdiction** ......................................................................**29**

 **C.**   **The Bankruptcy Court's Conclusion that Plaintiff Failed to Sufficiently Allege Causation is Wrong** ..............................**32**

 **D.**   **The Bankruptcy Court Abused its Discretion by Failing to Grant Plaintiff Leave to Amend the Complaint** ...........................**36**

 **E.**   **PG&E's Alternative Tariff 14 and Motion to Strike Class Claims Arguments Were Properly Rejected** ...........................**38**

**VII.**   **CONCLUSION** ..........................................................................**40**

**CERTIFICATE OF COMPLIANCE** ..................................................**41**

**CERTIFICATE OF SERVICE** .............................................................**42**

TABLE OF AUTHORITIES

PAGE(S)

## Cases

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ........................................................................20

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ........................................................................19

*Bigbee v. Pac. Tel. & Tel. Co.*,
　34 Cal. 3d 49 (1983)........................................................................35

*Cabral v. Ralphs Grocery Co.*,
　51 Cal. 4th 764 (2011)......................................................................34

*Cellular Plus v. Superior Court*,
　14 Cal. App. 4th 1224 (1993)............................................................29

*Chamber of Commerce v. City of Seattle*,
　890 F.3d 769 (9th Cir. 2018) ............................................................22

*City of Modesto v. Dow Chem. Co.*,
　19 Cal. App. 5th 130 (Cal. Ct. App. 2018)................................. 17, 33

*Cundiff v. GTE California*,
　101 Cal. App. 4th 1395 (2002).................................................... 29, 30

*Ditto v. McCurdy*,
　510 F.3d 1070 (9th Cir. 2007).............................................................7

*Dytch v. Yoon*,
　2011 WL 839421 (N.D. Cal. Mar. 7, 2011) ........................................36

*Eminence Capital v. Aspeon*,
　316 F.3d 1048 (9th Cir. 2003).................................................... 18, 36

*Gompper v. VISX*,
　298 F.3d 893 (9th Cir. 2002)...............................................................7

*Hadley v. Kellogg Sales*,
    273 F. Supp. 3d 1052 (N.D. Cal. 2017).................................................................22

*Hartwell Corp. v. Superior Court* (*Santamaria*),
    27 Cal. 4th 256 (2002) .................................................................... *passim*

*In re EPD Inv. Co., LLC*,
    523 B.R. 680 (B.A.P. 9th Cir. 2015) ....................................................................7

*In re Jakubaitis*,
    604 B.R. 562 (B.A.P. 9th Cir. 2019) ....................................................................7

*In re Park at Dash Point*,
    985 F.2d 1008 (9th Cir. 1993) ..............................................................................7

*Kairy v. SuperShuttle Int'l*,
    660 F.3d 1146 (9th Cir. 2011) ...................................................................... 21, 24

*Ladore v. Sony Computer Entm't Am., LLC*,
    75 F. Supp. 3d 1065 (N.D. Cal. 2014)................................................................35

*Langley v. Pac. Gas & Elec. Co.*,
    41 Cal. 2d 655 (1953) .........................................................................................35

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ........................................................................ 18, 33

*Mangiaracina v. BNSF Ry. Co.*,
    2019 WL 1975461 (N.D. Cal. Mar. 7, 2019) ............................................ *passim*

*Mata v. Pac. Gas & Elec. Co.*,
    224 Cal. App. 4th 309 (2014)....................................................................... 27, 28

*Mendiondo v. Centinela Hosp.*,
    521 F.3d 1097 (9th Cir. 2008) .............................................................................19

*N. Star Gas Co. v. Pac. Gas & Elec. Co.*,
    2016 WL 5358590 (N.D. Cal. Sept. 26, 2016)........................................... *passim*

*Nevis v. Pac. Gas & Elec. Co.*,
    43 Cal. 2d 626 (1954) .........................................................................................28

*Nwabueze v. AT&T,*
2011 WL 332473 (N.D. Cal. Jan. 29, 2011) .......................................................30

*PegaStaff v. Pac. Gas & Elec. Co.,*
239 Cal. App. 4th 1303 (2015).................................................... *passim*

*San Diego Gas & Electric Co. v. Superior Court (Covalt),*
13 Cal. 4th 893 (1996)................................................................ *passim*

*State of Nev. v. Watkins,*
914 F.2d 1545 (9th Cir. 1990)............................................................35

*Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas & Elec. Co.,*
146 F. Supp. 3d 1170 (N.D. Cal. 2015)........................................ *passim*

*U.S. ex rel. Giles v. Sardie,*
191 F. Supp. 2d 1117 (C.D. Cal. 2000)......................................... 18, 35

*Uriell v. Regents of Univ. of California,*
234 Cal. App. 4th 735 (2015).............................................................33

*Vila v. Tahoe Southside Water Util.,*
233 Cal. App. 2d 469 (1965).......................................................... 21, 29

*Waters v. Pac. Tel. Co.,*
12 Cal. 3d 1 (1974)...........................................................................38

*Wilson v. S. California Edison Co.,*
234 Cal. App. 4th 123 (2015)...................................................... *passim*

*Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.,*
953 F.3d 1108 (9th Cir. 2020)...........................................................20

## Statutes

28 U.S.C. § 158.....................................................................................6

28 U.S.C. § 1334...................................................................................6

Cal. Civil Code § 3294.........................................................................11

Cal. Pub. Res. Code § 4292 ........................................................ *passim*

Cal. Pub. Res. Code § 4293 ............................................................ *passim*

Cal. Pub. Util. Code § 451 ........................................................... 11, 12

Cal. Pub. Util. Code § 1759 ........................................................... *passim*

Cal. Pub. Util. Code § 2106 .............................................................3, 11


**Rules**

Fed. R. Bankr. P. 8002 ......................................................................6

Fed. R. Bankr. P. 8005 ......................................................................6

Fed. R. Bankr. P. 8015 .....................................................................41

Fed. R. Civ. P. 8 .............................................................................19

**Other Authorities**

CPUC General Order 95 ................................................................ *passim*

CPUC General Order 165 .............................................................. *passim*

Judicial Council of California Civil Jury Instructions (CACI) 400................. 24, 33

Judicial Council of California Civil Jury Instructions (CACI) 430........................33

Judicial Council of California Civil Jury Instructions (CACI) 431........................33

## I.    INTRODUCTION

In the fall of 2019, months after seeking Chapter 11 protection from lawsuits filed in the wake of several catastrophic wildfires caused by its negligently maintained power transmission lines, PG&E imposed an unprecedented series of power blackouts, called "Public Safety Power Shutoffs" or "PSPSs."  These blackouts, some of which lasted up to ten days, cut off power to more than 800,000 PG&E customers in Northern California.

PG&E's negligence in maintaining its power grid made the PSPSs necessary.  Indeed, PG&E's years-long failure to trim or remove vegetation near and around its distribution lines, and its failure to replace or repair aging infrastructure, ensured that common and recurring weather conditions would spark fires that could and have destroyed entire communities, causing  the deaths of at least 117 people since 2010.

PG&E is a convicted felon.  The Honorable William H. Alsup, who is supervising PG&E's probation, recently castigated the utility for its ongoing failure to properly maintain the safety of its grid.

As Judge Alsup noted, this negligent maintenance has persisted for years, continued after PG&E filed for bankruptcy in January 2019, and continues to the present day.  Judge Alsup made clear that PG&E's ongoing negligent maintenance caused the PSPSs:

> [W]e must continue to tolerate PSPSs as the lesser evil until PG&E
> has come into compliance with state law and the grid is safe to operate
> in high winds.  But as segments of lines do come into compliance and
> do become safe, PG&E should configure the grid to keep those
> segments energized, while denying power to the unsafe segments.

*See* Appellant's Appendix ("AA") 1283 [Order Modifying Conditions of

Probation, *U.S. v. PG&E*, No. CR 14-0715 WHA (N.D. Cal. Apr. 29, 2020), Dkt.

1186, at 13].  PG&E itself conceded in a recent filing with the California Public

Utilities Commission ("CPUC"), the state regulatory body that oversees PG&E

operations, that some of its transmission lines within the potential PSPS scope are

not healthy and present a high wildfire risk.  *See* Amended PG&E Public Safety

Power Shutoff (PSPS) Report to the CPUC October 9-12 De-Energization Event,

at 9 (Nov. 8, 2019).[1]

The blackouts caused substantial hardship and damages to the affected

customers, including, among others, loss of habitability, expenses for alternate

power sources, loss of food items in refrigerators, loss of mobile phone usage, and

business interruption losses.  On December 19, 2019, Plaintiff Anthony Gantner

("Plaintiff"), a resident of St. Helena, on behalf of himself and all other affected

PG&E customers, filed this negligence class action, as an Adversary Proceeding in

PG&E's bankruptcy, seeking at least $2.5 billion in damages for the class.

---

[1] The document is available at:
https://www.pge.com/pge_global/common/pdfs/safety/emergency-preparedness/natural-disaster/wildfires/PSPS-Report-Letter-10.09.19-amend.pdf

PG&E moved to dismiss the Complaint, arguing: first, that the CPUC's regulatory regime preempted Plaintiff's negligence claims; and second, that PG&E is immune from liability under PG&E Electric Rule No. 14, also known as Tariff Rule 14, which limits PG&E's liability for certain energy interruptions due to energy market fluctuations.  In reply, PG&E also argued for the first time that the Complaint did not sufficiently allege causation.  And PG&E moved to strike the class allegations.  The bankruptcy court granted the motion to dismiss without leave to amend, basing  its ruling entirely on the CPUC preemption argument, not even mentioning PG&E's Tariff Rule 14 argument, and failing to reach PG&E's motion to strike.[2]

To find preemption, the bankruptcy court erred in interpreting the interplay between two California statutes.  California Public Utilities Code § 2106, makes utilities liable for damages their negligence causes.[3]  There is an exception to this rule under §1759 *if* the utility can make a factual showing that such action would actually hinder or interfere with the CPUC's ability to regulate it.

---

[2] Unsurprisingly, the bankruptcy court did not consider PG&E's Tariff Rule 14 argument, given that this Rule does not apply to PSPS events or outages caused by PG&E's own negligence.  *Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas & Elec. Co.*, 146 F. Supp. 3d 1170 (N.D. Cal. 2015).

[3] All further statutory references are to the California Public Utilities Code unless otherwise stated.

Here, neither PG&E nor the CPUC, made any such showing.  Both simply made conclusory assertions, without any facts or any explanation as to how or why preemption applied.  The mere fact that this action seeks money damages from PG&E is not sufficient or even relevant.  In fact, as part of the currently proposed Chapter 11 reorganization plan, which the CPUC has approved, PG&E will be paying some $25 billion in damages to wildfire victims, insurance companies, municipalities, and others for damages caused by wildfires that resulted from the same negligent maintenance that led to the need for the PSPSs.  If requiring PG&E to pay $25 billion in wildfire damages will not interfere with the CPUC's ability to regulate PG&E, then neither will paying $2.5 billion for PSPS damages.

PG&E tried to confuse the issue below.  It emphasized that the CPUC regulates the way power companies can implement PSPSs.  But the Complaint does not contend that PG&E should not have implemented the PSPSs at issue, or that it implemented them improperly; rather, the Complaint simply alleges that the reason PG&E was forced to implement the PSPSs in the first place was its negligent maintenance.

To the extent PG&E disputes the factual underpinnings of the Complaint, and whether those facts supposedly interfere with the CPUC's ability to regulate PG&E, PG&E's motion to dismiss is simply not the right place to bring such fact-based challenges.  The facts must be viewed in the light most favorable to the non-

moving party—Plaintiff—something the bankruptcy court appeared to get backwards.

PG&E's causation argument—which the bankruptcy court erred in addressing because it was raised for the first time on reply—also fails.  In apparent *dicta*, the bankruptcy court stated: "In any event, the proximate causal connection between the harms suffered by Plaintiff during the blackouts (loss of habitability of his dwelling, loss of cell phone connectivity) and the conditions pre-dating those blackouts is too remote to defeat the MTD, given that such PSPS events can be necessitated by high winds even when equipment is adequately maintained." (AA 1243.)

But this unsupported conclusion—which is contrary to Judge Alsup's findings in the criminal case—demonstrates the existence of a key factual question that cannot be resolved on a motion to dismiss.  Specifically, would the PSPSs have been required if PG&E had adequately maintained its lines and equipment?  Contrary to the bankruptcy court's decision, the Complaint sufficiently alleges that but for PG&E's negligent maintenance, the PSPSs would not have been required.

Finally, the bankruptcy court erred when it failed to grant leave to amend the Complaint, despite the fact that Plaintiff requested leave to amend and proffered relevant additional facts, and despite the CPUC conceding at oral argument that Plaintiff could amend to state a case for negligence against PG&E.

This Court, therefore, should reverse the dismissal of the Complaint.

## II.   JURISDICTIONAL STATEMENT

Plaintiff appeals from a decision and order of the bankruptcy court dismissing his complaint against PG&E without leave to amend.  The bankruptcy court's decision was dated March 30, 2020, and its subsequent order was dated April 3, 2020.  (AA 1234-44 (Decision); 1245-46 (Order).)  The bankruptcy court had jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334 and 157; its decision and order are final and appealable under 28 U.S.C. § 158(a)(1).

Plaintiff timely filed his notice of appeal on April 6th, well within the 14 days prescribed by Fed. R. Bankr. P. 8002.  (AA 1247-1250.)  He elected to have his appeal heard by the district court pursuant to 28 U.S.C. § 158(c) and Fed. R. Bankr. P. 8005(a).  (AA 1248.)  This Court therefore has jurisdiction over this appeal.

## III.   STATEMENT OF THE ISSUES AND STANDARDS OF REVIEW

1. Whether the bankruptcy court erred by granting PG&E's Motion to Dismiss.

2. Whether the bankruptcy court erred by deciding that Plaintiff's negligence claim was preempted by § 1759.

3. Whether the bankruptcy court erred by considering PG&E's argument, raised for the first time on reply, that Plaintiff had not sufficiently alleged causation.

4. Whether the bankruptcy court abused its discretion by failing to grant Plaintiff leave to amend the Complaint.

**Issues 1-3** are reviewed *de novo*. *In re Park at Dash Point*, 985 F.2d 1008, 1010 (9th Cir. 1993) (bankruptcy court interpretation of state law reviewed de novo); *In re Jakubaitis*, 604 B.R. 562, 569 (B.A.P. 9th Cir. 2019) (mixed question of law and fact reviewed de novo); *In re EPD Inv. Co., LLC*, 523 B.R. 680, 684 (B.A.P. 9th Cir. 2015) (order granting motion to dismiss reviewed de novo). *De novo* review means the Court "considers the matter anew, as if no bankruptcy court ruling was rendered." *In re Jakubaitis*, 604 B.R. at 569.

**Issue 4** is reviewed for abuse of discretion. *Ditto v. McCurdy*, 510 F.3d 1070, 1079 (9th Cir. 2007). Nonetheless, "dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by *any* amendment." *Gompper v. VISX*, 298 F.3d 893, 898 (9th Cir. 2002) (emphasis added).

## IV.   STATEMENT OF THE CASE

### A.   Factual Background

#### 1.   PG&E's Negligent Maintenance of Its Power Grid Necessitated the Public Safety Power Shutoffs

On January 29, 2019, following a particularly gruesome 2018 fire season, PG&E sought bankruptcy protection.  In October and November 2019, while still in bankruptcy, PG&E shut off power to customers in at least five distinct PSPSs. (AA 14-16.)

Hundreds of thousands of households and businesses were affected by these PSPSs, suffering loss to person and property.  (AA 2, 21-22.)  Plaintiff contends that these losses resulted from PG&E's negligence, that for years PG&E breached its legal obligation to maintain a reasonably safe power grid, and that its failure to do so led to the need for the particular PSPSs in issue here.  (AA 3-16, 20-21.)

PG&E's failures in this regard are well-documented.  Another court in this District recently detailed PG&E's failures in its years-long supervision of the company's criminal probation.  (*See* AA 1271-83 [Order Modifying Conditions of Probation, *U.S. v. PG&E*, No. CR 14-0715 WHA (N.D. Cal. Apr. 29, 2020), Dkt. 1186]; AA 1289-1380 [May 28, 2020 Transcript of Teleconference Proceedings].) There, Judge Alsup made the connection between PG&E's history of mismanagement in maintaining its power grid and the need to employ PSPSs.

PG&E "cannot safely deliver power to California," Judge Alsup began. "For years, in order to enlarge dividends, bonuses, and political contributions, PG&E cheated on its maintenance of its grid—to the point that the grid became unsafe to operate during our annual high winds, so unsafe that the grid itself failed and ignited many catastrophic wildfires." (AA 1271.) PG&E uses PSPSs, the Court noted, precisely because of the risk its unsafe grid poses. (AA 1274-76.)

In addition to reciting PG&E's woeful safety record, Judge Alsup made certain factual findings pertinent here. The court found that PG&E's distribution lines and its transmission lines remain in disrepair; that it has systematically failed to comply with California law as well as its own plan to maintain the four-foot clearance required between limbs and power lines, with hundreds of miles of unsafe lines and thousands of "risk" trees noted by inspectors (but not identified by PG&E); and that PG&E's transmission towers suffer from "defective and worn-out hardware" which its own inspections failed to capture and thus were not being addressed as they should be. (AA 1276-81.)

And Judge Alsup specifically recognized that the negligent maintenance made the PSPSs necessary: "We must continue to tolerate PSPSs as the lesser evil," Judge Alsup concluded, "until PG&E has come into compliance with state law and the grid is safe to operate in high winds. But as segments of lines do come into compliance and do become safe, PG&E should configure the grid to keep

those segments energized, while denying power to the unsafe segments." (AA 1283.)

### 2. The CPUC's Role

The CPUC is charged with regulating PG&E. PG&E and the CPUC emphasized below that the CPUC has exercised authority over *how* and *when* energy utilities like PG&E may shut off power to its customers to avoid potential wildfires. That is true, but irrelevant.

In 2018, the CPUC adopted Resolution ESRB-8 to strengthen customer notification requirements before de-energization events such as the PSPSs and ordered utilities to develop "de-energization" programs. (AA 465-73.) The CPUC approved such a program as part of PG&E's Wildfire Safety Plan in 2019. (AA 684-773.) That program set forth certain guidelines and minimum standards for PG&E's implementation of PSPSs. (AA 684-773.)

The CPUC had and has no power, however, to award damages to customers because of a PSPS. Indeed, the CPUC disclaimed any such role when it adopted Resolution ESRB-8. "This resolution . . . is *not* the venue," it announced, to consider any "financial liability" to PG&E's customers because of its use of PSPSs. (AA 469 [emphasis added].)

That "venue" is here in this lawsuit.

B.      **Procedural History**

1.      **The Complaint**

Plaintiff filed his class action complaint as an adversary proceeding in PG&E's bankruptcy, asserting a single claim of negligence against PG&E for its failure to maintain a reasonably safe power grid.  The Complaint does not challenge PG&E's right to institute PSPSs.  Rather, Plaintiff seeks compensation for the losses he and millions of other Californians suffered as a result of the PSPSs, which he contends were necessary as a result of PG&E's negligent actions and omissions in maintaining its power grid.  (AA 2, 9-11, 16-17.)

Plaintiff seeks special and general tort damages, punitive and exemplary damages as allowed under Cal. Civil Code § 3294 and Cal. Pub. Util. Code § 2106 (discussed below), and an injunction ordering PG&E to cease violating California Public Utilities Commission General Orders Nos. 95 and 165, Cal. Pub. Res. Code §§ 4292 and 4293, and Cal. Pub. Util. Code § 451.[4]  (AA 23-24.)

---

[4] General Order No. 95 sets forth design standards for PG&E's electrical equipment, including that PG&E must ensure that its power lines can withstand winds of up to 92 miles per hour.  General Order 165 requires PG&E to inspect its distribution facilities to maintain a safe and reliable electric system.  Cal. Pub. Res. Code § 4292 requires PG&E to "maintain around and adjacent to any pole or tower which supports a switch, fuse, transformer, lightning arrester, line junction, or dead end or corner pole, a firebreak which consists of a clearing of not less than 10 feet in each direction from the outer circumference of such pole or tower."  Cal. Pub. Res. Code § 4293 mandates that PG&E must maintain clearances of four to ten feet for all power lines, depending on voltage.  Under § 4293, "Dead trees, old

### 2. PG&E's Motion to Dismiss and Strike Class Claims

PG&E moved to dismiss the Complaint or, in the alternative, strike its class claims. (AA 25-54.) PG&E argued that § 1759 preempted Plaintiff's claim; that under Tariff Rule 14, PG&E was authorized to interrupt service without liability when, in its sole opinion, it was necessary for public safety; and that Plaintiff's class claims failed on predominance and ascertainability grounds. (AA 41-53.)

Specifically, PG&E argued that Plaintiff's action would hinder or interfere with the CPUC's policies concerning PSPSs, and that absent this litigation Plaintiff and the class had recourse through the CPUC. (AA 45-48.)

### 3. Plaintiff's Opposition

In opposition, Plaintiff argued that the case was not barred by § 1759 because it did not interfere with the CPUC's regulatory authority over PSPSs, to the contrary it reinforced it, and his action sought damages the CPUC cannot award. (AA 1005-14.) Plaintiff also argued that Tariff Rule 14 does not apply, and that PG&E's motion to strike was premature and Plaintiff's class claim was well-pled. (AA 1014-24.) Finally, Plaintiff asked for leave to amend in the event the bankruptcy court found the allegations of his complaint lacking. (AA 1025.)

---

decadent or rotten trees, trees weakened by decay or disease and trees or portions thereof that are leaning toward the line which may contact the line from the side or may fall on the line shall be felled, cut, or trimmed so as to remove such hazard." Section 451 requires PG&E to "furnish and maintain such adequate, efficient, just, and reasonable service" to its customers.

### 4.      PG&E's Reply, the CPUC's Amicus Brief, and the Hearing

On reply, PG&E added a new argument: That Plaintiff failed to sufficiently plead that PG&E's negligence caused his injuries.  (AA 1106, 1111-13.)  The same day PG&E filed its reply, the CPUC filed an amicus brief on preemption.  (AA 1122-29.)  The CPUC argued, in similarly conclusory manner, that the action would interfere with its regulatory authority over PG&E.  (AA 1127-29.)

Plaintiff moved to strike the new argument in PG&E's reply.  (AA 1130-32.) Plaintiff also filed a response to the CPUC's brief arguing that the CPUC failed to show how holding PG&E liable in damages for its own negligence would or could interfere with its authority and that the bankruptcy court was not bound by the CPUC's opinion in any event. (AA 1148-52.)

At oral argument,  Plaintiff's counsel specifically pointed the Court to a document referenced by PG&E in its moving papers (Amended PG&E Public Safety Power Shutoff (PSPS) Report to the CPUC October 9-12 De-Energization Event, which PG&E's itself cited in its opening brief (AA 39 & fn. 8))—that reads (at. p.9 of that report): "Assessment results confirm asset health and low wildfire risk *for the majority of transmission lines* within the potential PSPS scope, resulting in the ability to safely maintain power on these lines and to reduce

customer impacts." [5]  (AA 1205 (Trans. 27:3-6 [emphasis added]).)  Plaintiff's

counsel proffered the reasonable inference from PG&E's statement that, if the

"majority" of lines were healthy and low risk, then there was a minority which

were not, and that was the reason PG&E instituted the PSPSs for those areas.  (AA

1205 [Trans. 27:12-18].)  Judge Alsup's subsequent findings, which post-date the

bankruptcy court's decision, are even more direct on the subject.

For its part, the CPUC made one critical concession:  It informed the

bankruptcy court that Plaintiff could likely amend to state a claim that the CPUC

agreed would *not* be preempted: "I would think there could be a set of

circumstances with specific shutdowns and specific power lines, in which you

might have a negligence claim that could work."  (AA 1197-98 [Trans. 19:23-

20:1].)

### 5.   The Bankruptcy Court's Decision and Order

In a Memorandum of Decision dated March 30, 2020, the bankruptcy court

granted PG&E's motion to dismiss on a single ground: "The court is dismissing

this adversary proceeding because it is preempted by Public Utilities Code section

1759."  (AA 1244.)  The decision stated that Plaintiff's negligence claim

"interferes with the CPUC's exclusive regulatory authority over . . . shutoffs"

---

[5] That document is available at:
https://www.pge.com/pge_global/common/pdfs/safety/emergency-preparedness/natural-disaster/wildfires/PSPS-Report-Letter-10.09.19-amend.pdf

because Plaintiff failed to allege "that [PG&E] exceeded the authority vested in it by the CPUC when it executed the PSPS events, and thus any damages incurred by parties as a result of these events must be addressed by the CPUC and not this court."  (AA 1242.)

The bankruptcy court rejected Plaintiff's argument that § 1759 does not apply.  The court reasoned—without any further explanation—that because the CPUC had already exercised its authority to regulate PSPSs before the PSPSs at issue, "any claim for damages caused by PSPS events approved by the CPUC, even if based on [ ] pre-existing events that may or may not have contributed to the necessity of the PSPS events, would interfere with the CPUC's policy-making decisions."  (AA 1243.)

Finally, despite stating that the only ground for granting the motion was § 1759 preemption, and without addressing that PG&E did not raise any causation argument until reply, the court added that "the proximate causal connection between the harms suffered by Plaintiff during the blackouts . . . and the conditions pre-dating those blackouts is too remote to defeat the MTD, given that such PSPS events can be necessitated by high winds even when equipment is adequately maintained."  (AA 1243.)

On April 3rd, the bankruptcy court issued its Order dismissing the complaint without leave to amend.  (AA 1246.)  This appeal followed.

## V.    SUMMARY OF THE ARGUMENT

The bankruptcy court's decision to dismiss this action without leave to amend was erroneous and should be reversed.

*First*, § 1759 does not preempt this case.  PG&E failed to satisfy its burden to prove that § 1759 preemption applied and the bankruptcy court failed to conduct the requisite analysis under *San Diego Gas & Electric Co. v. Superior Court (Covalt)*, 13 Cal. 4th 893 (1996).

This action does not hinder or interfere with the CPUC's exercise of regulatory authority.  Instead, it seeks to compensate customers who suffered harm because of PG&E's negligent maintenance of its power grid.  The CPUC is not capable of providing this type of relief.  Finding PG&E negligent, and that its customers are entitled to compensation for the harm they suffered because of that negligence, does nothing to interfere with the CPUC's regulation of PSPS implementations.  *Covalt*, 13 Cal. 4th at 939.

Put plainly, the CPUC's policy concerning how PG&E conducts PSPSs has nothing to do with whether PG&E was negligent in causing the need for PSPSs in the first instance.  And awarding damages for such negligence does not interfere with the CPUC's regulatory authority, nor is it contrary to any policy of that regulatory body.  *Hartwell Corp. v. Superior Court (Santamaria)*, 27 Cal. 4th 256, 275 (2002).  The CPUC's conclusory assertion to the contrary does not carry the

legal or factual weight necessary to find that preemption exists.  *Wilson v. S. California Edison Co.*, 234 Cal. App. 4th 123 (2015).

As if to underscore the point, the CPUC just gave its approval to the proposed PG&E reorganization plan calling for PG&E to pay some $25 billion to wildfire victims, municipalities, and subrogation insurers as compensation for the same negligence giving rise to the claims here.  That compensation, like that sought here, complements the CPUC's authority under § 8386(a) to ensure that PG&E maintains its electrical lines in a manner that will "minimize the risk of catastrophic wildfires."  That is, it provides a strong financial incentive for PG&E to fix its grid.  *PegaStaff v. Pac. Gas & Elec. Co.*, 239 Cal. App. 4th 1303, 1321–22 (2015).

*Second*, PG&E's causation argument was both untimely and without merit. In *dicta*, the court indicated that Plaintiff failed to sufficiently allege a "proximate causal connection" between PG&E's negligence and the harm he suffered.  (AA 1243.)  Not so.  The Complaint sufficiently alleges that PG&E's negligent maintenance of its grid caused the need for the PSPS events that injured him.  This causal link thus meets the substantial factor test applied in California.  *City of Modesto v. Dow Chem. Co.*, 19 Cal. App. 5th 130, 156 (Cal. Ct. App. 2018), *as modified on denial of reh'g* (Feb. 6, 2018), *review denied* (Apr. 25, 2018), *as*

*modified on denial of reh'g*, (Feb. 6, 2018) *and review filed*, (Feb. 20, 2018) *and review denied*, (Apr. 25, 2018).

The bankruptcy court *speculated* that even with adequate maintenance the PSPSs could have been "necessitated by high winds," but the Complaint alleges just the opposite. The bankruptcy court is not entitled to make factual findings against a Plaintiff at the Rule 12 stage of the proceedings—it must take his allegations as true and construe them in the light most favorable to him. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). In any case, PG&E raised its causation argument for the first time on reply; it was legal error for the bankruptcy court to consider it. *U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000).

*Third*, the bankruptcy court erred when it failed to grant Plaintiff leave to amend. *Eminence Capital v. Aspeon*, 316 F.3d 1048, 1053 (9th Cir. 2003). Judge Alsup's recent probation order makes plain that Plaintiff could amend to tie the state of PG&E's grids even more specifically to the PSPSs. Even the CPUC's counsel conceded that Plaintiff could amend to assert more specific causation allegations that would support the negligence claim. (AA 1197-98 [Trans. 19:23-20:1].)

*Fourth*, while the bankruptcy court's decision was in error, it correctly did not address either the Tariff Rule 14 argument or the motion to strike the class

allegations.  As is implicit from their absence from the bankruptcy court decision, both those arguments fail.  *Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas & Elec. Co.*, 146 F. Supp. 3d 1170 (N.D. Cal. 2015), is well-reasoned, directly on point, and holds that Tariff Rule 14 does not insulate PG&E from liability for its own negligence.  Further, Tariff Rule 14 does not apply to PSPSs in any event.  And PG&E's motion to strike is premature.  It asks the court to rule on issues properly addressed at class certification with the benefit of discovery.

## VI.   ARGUMENT

### A.   Legal Standards

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

The Section 1759 preemption inquiry is properly considered under Rule 12(b)(6) standards.  *See N. Star Gas Co. v. Pac. Gas & Elec. Co.*, No. 15-CV-02575-HSG, 2016 WL 5358590, at *6–16 (N.D. Cal. Sept. 26, 2016).  "Dismissal under 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the

court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts "accept

all factual allegations in the complaint as true and construe the pleadings in the

light most favorable to the nonmoving party." *Winter ex rel. United States v.*

*Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1114 & n.4 (9th Cir. 2020).

### B.   The Bankruptcy Court's Decision that § 1759 Preempts this Action Was Error

 Section 2016 provides for a private right of action against public utilities:

> Any public utility which does, causes to be done, or permits any act,
> matter, or thing prohibited or declared unlawful, or which omits to do
> any act, matter, or thing required to be done, either by the
> Constitution, any law of his State, or any order or decision of the
> commission, shall be liable to the persons or corporations affected
> thereby for all loss, damages, or injury caused thereby or resulting
> therefrom.   If the court finds that the act or omission was willful, it
> may, in addition to the actual damages, award exemplary damages.
> An action to recover for such loss, damage, or injury may be brought
> in any court of competent jurisdiction by any corporation or person.

Despite this, PG&E argued below that Plaintiff's action was preempted by

§ 1759(a) which provides:

> No court of this state, except the Supreme Court and the court of
> appeal, to the extent specified in this article, shall have jurisdiction to
> review, reverse, correct, or annul any order or decision of the
> commission or to suspend or delay the execution or operation thereof,
> or to enjoin, restrain, or interfere with the commission in the
> performance of its official duties, as provided by law and the rules of
> court.

Plaintiff is not asking this Court to "review, reverse, correct, or annul any order or decision of the [CPUC] or to "suspend or delay the execution or operation thereof, or to enjoin, restrain" the CPUC from anything. As a result, PG&E argued that this action somehow would "interfere with the [CPUC] in the performance of its official duties" without ever explaining how or why.

The mere fact that this action relates to PSPSs and that the CPUC regulates how PSPSs are implemented does not mean that this action "interferes" with the CPUC's "performance of its official duties." "It has never been the rule in California that the [CPUC] has *exclusive* jurisdiction over any and all matters having any reference to the regulation and supervision of public utilities." *Vila v. Tahoe Southside Water Util.*, 233 Cal. App. 2d 469, 477 (1965) (emphasis in original).

The California Supreme Court set out the pertinent test for § 1759 preemption in *Covalt*, 13 Cal. 4th 893. The *Covalt* test has three components: "(1) whether CPUC had the authority to adopt a regulatory policy on the subject matter of the litigation; (2) whether CPUC has exercised that authority; and (3) whether action in the case before the court would hinder or interfere with CPUC's exercise of regulatory authority." *N. Star Gas Co.*, 2016 WL 5358590, at *9 (citing *Kairy v. SuperShuttle Int'l*, 660 F.3d 1146, 1150 (9th Cir. 2011)).

All three prongs must be answered in the affirmative for preemption to

apply, and PG&E bears the burden to demonstrate that such preemption is

warranted.  *Chamber of Commerce v. City of Seattle*, 890 F.3d 769, 795 (9th Cir.

2018) (burden to show preemption is on party asserting it); *Hadley v. Kellogg*

*Sales*, 273 F. Supp. 3d 1052, 1076 (N.D. Cal. 2017) (same).  While Plaintiff does

not dispute that the first and second parts of the *Covalt* test are satisfied, the third

prong is most assuredly not.

This action seeks to compensate customers who suffered harm because of

PG&E's negligent maintenance of its power grid.  That negligence led to PG&E's

need to implement the PSPSs, which in turn caused harm to the customers

impacted by the loss of power.  In this, these customers sit in the same position,

legally speaking, as victims of wildfires caused by that negligence.

Neither PG&E nor the CPUC has demonstrated that awarding damages for

that negligence hinders or interferes with the standards and guidelines the CPUC

has adopted and approved for PSPSs.  By their terms, those standards and

guidelines ensure only that when PG&E chooses to implement a PSPS, it does so

in as narrowly tailored and least disruptive a way as possible.

But those standards and guidelines weren't meant to insulate PG&E from

any customer loss arising from a PSPS.  And indeed, the CPUC said as much, at

least before Plaintiff filed this lawsuit.  (AA 469 ("This resolution . . . is *not* the

venue," to consider any "financial liability" to PG&E's customers because of its use of PSPSs).)  Denying this claim on preemption grounds would insulate PG&E from compensating affected customers.  And that is a demonstrably wrong result.

       1.    **This Action Does Not Hinder or Interfere with the CPUC's Exercise of Regulatory Authority**

          a.    **The Bankruptcy Court Did Not Properly Apply the *Covalt* Test**

The bankruptcy court failed to apply the *Covalt* test *at all*, which resulted in the court's incorrect conclusion.  Its analysis of the timing of PG&E's negligent conduct rather than whether a finding of negligence here would interfere with any CPUC policy or conclusion was, simply, mistaken.  (AA 1242-43.)

In *Covalt*, the court considered whether § 1759 preempted a nuisance claim based on property damage caused by San Diego Gas & Electric's ("SDG&E's") powerlines producing electric and magnetic fields that *the CPUC had found* not to be dangerous.   *Covalt*, 13 Cal. 4th at 917.  The *Covalt* court determined that a damages award in the nuisance case would be inconsistent with the CPUC's policies and conclusions because such finding  "would be inconsistent with the commission's conclusion, reached after consulting with DHS, studying the reports of advisory groups and experts, and holding evidentiary hearings, that the available evidence does not support a reasonable belief that 60 Hz electric and magnetic fields present a substantial risk of physical harm, . . ."  *Covalt,* 13 Cal. 4th at 939.

Here, by contrast, the bankruptcy court conducted no such analysis.  If it had, it would have yielded the opposite result.  Unlike in *Covalt*, there is no direct conflict between a conclusion already reached by the CPUC and any findings needed to sustain liability in this case.  To award damages here, the factfinder would have to find: (1) PG&E negligently maintained its power grid; (2) PG&E's negligent maintenance of its power grid caused it to shut off power to Plaintiff and the Class; and (3) PG&E's negligence was a substantial factor in causing Plaintiff's (and the Class's) injuries.  *See* Judicial Council of California Civil Jury Instructions (CACI) 400.  Those findings would not conflict in any way with any CPUC policy or conclusion on the subject of PSPSs.

The Ninth Circuit's decision in *Kairy*, 660 F.3d 1146, is instructive.    In that case, a former driver sued a passenger stage corporation for wages and benefits on the theory that he was misclassified as an independent contractor.  The company moved to dismiss based on § 1759 preemption and the trial court granted the dismissal.  The Ninth Circuit reversed, holding that the *Covalt* test's third prong was not satisfied, because the employee/independent contractor determination the court would have to make to decide the case would not hinder or interfere with the CPUC's jurisdiction.  *Id.* at 1156.

### b.     The Bankruptcy Court Failed to Properly
### Analyze § 1759 Preemption under *Hartwell*

In *Hartwell*, 27 Cal. 4th 256, the California Supreme Court further clarified

the line between cases that interfere with the CPUC's regulatory authority and

those that do not.  Plaintiffs challenged both the adequacy of federal and state

drinking water standards and compliance with those standards, seeking damages

and injunctive relief.  *Id.* at 276, 279.  The utilities demurred based on § 1759, a

trial court granted that motion, and the court of appeal affirmed.

But the California Supreme Court reversed in part, articulating an additional

basis to affirm a court's jurisdiction over a utility's actions:

> An award of damages is barred by section 1759 if it would be contrary
> to a policy adopted by the [CPUC] and would interfere with its
> regulation of public utilities.  On the other hand, superior courts are
> not precluded from acting in aid of, rather than in derogation of, the
> [CPUC's] jurisdiction.

*Id.* at 275 (internal citation omitted).  The court explained that "a court has

jurisdiction to enforce a [utility's] legal obligation to comply with [CPUC]

standards and policies and to award damages for violations" and allowed plaintiffs

to pursue damages claims based on a theory that the utility failed to meet those

standards.  *Id.* at 275–76.

The bankruptcy court failed to analyze either whether an award of damages

would be contrary to a CPUC policy or whether it would interfere with its

regulation of PG&E.  Neither necessary condition is satisfied here.  A damages

award is not contrary to any CPUC policy concerning PSPSs or powerline safety.

Were it contrary, PG&E would not have agreed to pay $25 billion to fire victims,

municipalities, and insurers because of its negligent maintenance of its powerlines.

And, as noted above, a damages award here does not interfere with any CPUC

regulation.

> ### c.      The CPUC's Conclusory Assertion that an Action Interferes with its Regulatory Authority Carries No Weight

The CPUC's bald assertion that this action would interfere with it regulating

PG&E does not mean that it does.  (AA 1122-29.)  In *Wilson*, 234 Cal. App. 4th

123, the utility appealed from a jury verdict awarding tort damages for negligently

allowing uncontrolled currents into a customer's home from an electrical

substation located next door.  The CPUC filed an amicus brief asserting, much like

it does here, that it had an ongoing policy and program and that a superior court

adjudication prior to a CPUC finding of wrongdoing "would interfere with the

Commission's authority to interpret and apply its own orders, decisions, rules and

regulations . . ." *Wilson*, 234 Cal. App. 4th at 148 (quoting the CPUC's brief).

The court disagreed, holding that it was not sufficient for the CPUC to have

issued general regulations on the subject and set forth design requirements to find

§ 1759 preemption.  Because there was no evidence that the CPUC had

investigated or regulated the specific stray voltage issue on which liability hinged,

the Court found that "the lawsuit would not interfere with or hinder any supervisory or regulatory policy of the [C]PUC." *Id.* at 151. So too here. At the end of the day it is up to the courts, not the CPUC, to make this call.

### d. Whether PG&E Met the CPUC's Minimum PSPS Standards is Irrelevant

The bankruptcy court's focus on whether PG&E met the minimum requirements set by the CPUC for PSPSs is misplaced. (AA 1242.) While the CPUC did not authorize or approve any particular PSPS or approve of PG&E's conduct during these events retroactively as of the filing of this brief, whether the execution of the PSPSs met the CPUC's standards is irrelevant—the claim here is that PG&E's negligence is what necessitated the PSPSs.

Even if PG&E had met the minimum requirements the CPUC set for electrical lines and equipment safety and PSPSs—and it has not—it would still not be insulated from a negligence lawsuit. *PegaStaff*, 239 Cal. App. 4th at 1320.

In *Mata v. Pac. Gas & Elec. Co.*, 224 Cal. App. 4th 309 (2014), *as modified on denial of reh'g* (Mar. 26, 2014), heirs of a decedent electrocuted by overhead powerlines while trimming trees brought a negligence action against PG&E alleging it failed to exercise due care in maintaining vegetation clearance near the power line. The superior court granted summary adjudication in PG&E's favor on a negligence per se cause of action because PG&E indisputably met its clearance

obligations under CPUC General Order No. 95 for that power line.  The superior

court then granted PG&E's subsequent motion to dismiss based on § 1759.

The court of appeal reversed.  It found that CPUC rules establishing

minimum clearance requirements did not relieve PG&E "of its obligation to

exercise reasonable care to avoid causing harm to others, or . . . its responsibility

for failing to do so."  *Mata,* 224 Cal. App. 4th at 318; *see also Nevis v. Pac. Gas &*

*Elec. Co.*, 43 Cal. 2d 626, 630 (1954) ("Compliance with the general orders of the

[CPUC] does not establish as a matter of law due care by the power company, but

merely relieves it 'of the charge of negligence per se.'").

Likewise, in *Wilson*, 234 Cal. App. 4th 123, the court of appeal found that

compliance with a minimum standard did not insulate a utility from negligence

liability.  *See also PegaStaff*, 239 Cal. App. 4th at 1320 ("merely meeting

[minimum] requirements does not necessarily insulate a utility from a superior

court suit").

Here, the CPUC has in no way indicated that PG&E may perform PSPSs

without liability to its customers, whether or not it follows CPUC guidelines and

rules.  Courts in this district uniformly agree that § 1759 dismissal is inappropriate

in this circumstance.  *See, e.g., N. Star Gas*, 2016 WL 5358590, at *13-15

(Gilliam, Jr., J.) (denying motion to dismiss based on § 1759 when case does not

involve complex interpretive challenges and damages finding would not hinder or

impede any CPUC policy); *see also Mangiaracina v. BNSF Ry. Co.*, No. 16-CV-05270-JST, 2019 WL 1975461, at *14 (N.D. Cal. Mar. 7, 2019) (Tigar, J.) (denying motion for summary judgment based on § 1759 when finding of negligence would not invalidate CPUC standards and plaintiffs seek damages based on past negligence).

### 2.     This Action Is in Aid of, and Complements, the CPUC's Jurisdiction

"[C]ourts are not precluded from acting in aid of, rather than in derogation of, the [CPUC's] jurisdiction." *Hartwell,* 27 Cal. 4th at 275.  In *Vila*, 233 Cal. App. 2d 469, the case on which *Hartwell* relies, the court found no preemption because the action, premised on a violation of a CPUC regulation, would aid rather than degrade the CPUC's regulatory authority.  *Id.* at 479.

*Cundiff v. GTE California*, 101 Cal. App. 4th 1395 (2002) follows this line of authority.  There, plaintiffs sued phone utilities for charging rental fees for nonexistent or obsolete phones.  *Id.* at 1400-02.  The court of appeal reversed the granting of a demurrer on § 1759 grounds based on interference with the CPUC's billing regulations because plaintiffs were not challenging the CPUC's decision to allow defendants to rent phones, but the manner in which defendants billed them under the regulations.  *Id.* at 1406.

That court relied on *Cellular Plus v. Superior Court*, 14 Cal. App. 4th 1224, 1245 (1993).  There, the court allowed an antitrust action for price-fixing against

cell phone companies despite the CPUC's regulation of pricing because plaintiffs did not challenge the CPUC's right to set rates for cellular service or have the commission change its rates. *Cundiff,* 101 Cal. App. 4th at 1407.

The same is true here. Plaintiff is not challenging the CPUC's right to regulate PG&E's PSPSs, or PG&E's maintenance of its lines. Nor is Plaintiff seeking to change those regulations. Rather, this action "actually furthers policies of [the CPUC]" because it incentivizes PG&E to provide safe and reliable electricity to its customers. *Cundiff*, 101 Cal. App. 4th at 1408; *see also Nwabueze v. AT&T*, No. C 09-1529 SI, 2011 WL 332473, at *16 (N.D. Cal. Jan. 29, 2011) ("A lawsuit for damages . . . would not interfere with any prospective regulatory program" since "a finding of liability would not be contrary to any policy adopted by the CPUC or otherwise interfere with the CPUC's regulation.").

*PegaStaff*, 239 Cal. App. 4th 1303 further illustrates the distinction between actions hindering the exercise of the CPUC's authority (which are barred) and those complementing it (which may go forward in court). In *PegaStaff*, a non-minority run staffing agency sued PG&E and others, alleging that PG&E's new tier structure that rewarded minority enterprises over others in response to new California Public Utilities Code sections and a CPUC general order designed to encourage the use of minority enterprises, negatively affected its business and discriminated against it. The trial court granted PG&E's motion for judgment on

the pleadings on the basis that § 1759 precluded jurisdiction.  The court of appeal reversed.

In that case, despite plaintiff alleging that PG&E set up its preference system to comply with CPUC rules, the court found that PG&E's alleged conduct was not necessary to comply with the Code sections, rules, and decisions at issue and in fact the CPUC had not authorized or permitted the alleged conduct.  Therefore, the court concluded that an award of damages or injunctive relief would enforce, not obstruct, the CPUC regulation.  *PegaStaff,* 239 Cal. App. 4th at 1327-28 (citing *Hartwell*, 27 Cal. 4th at 275).

The facts here are even stronger than in *PegaStaff*.  Plaintiff's negligence claim is based on PG&E repeatedly violating its duty of care to its customers and, in the process, violating §§ 451, 8386(a), the Cal. Pub. Res. Code § 4292, 4293, and CPUC General Orders Nos. 95 & 165 culminating in it shutting off power to hundreds of thousands of customers. (AA 4-5, 7-13, 20-21.)  The CPUC did not specifically authorize PG&E to violate these statutes or orders.

Further, the nature of the relief sought is relevant to whether an action would hinder or interfere with the CPUC's exercise of regulatory authority.  *PegaStaff*, 239 Cal. App. 4th at 1318.  "If the nature of the relief sought . . . fall[s] outside the [C]PUC's constitutional and statutory powers, the claim will not be barred by section 1759."  *PegaStaff*, 239 Cal. App. 4th at 1318; *Mangiaracina*, 2019 WL

1975461, at *14 ("the Court finds further support [for its denial of defendant's motion to dismiss based on § 1759] in the fact that Plaintiffs seek damages based on past negligence, which the CPUC lacks the power to adjudicate.").

It is undisputed that the CPUC has stated that it does not have the authority to award tort damages, which is what Plaintiff seeks.  (AA 1050 ("[T]his Commission does not have authority to award damages, as requested by Complainant, but only reparations. . . . Accordingly, Complainant's request in this regard for an award of damages is outside of Commission jurisdiction."); AA 1033-34; *Mangiaracina*, 2019 WL 1975461, at *14 (CPUC lacks power to adjudicate damages based on past negligence).  This alone means that the bankruptcy court erred in finding §1759 preemption.  *PegaStaff*, 239 Cal. App. 4th at 1318**.**

## C.    The Bankruptcy Court's Conclusion that Plaintiff Failed to Sufficiently Allege Causation is Wrong

In *dicta*, the bankruptcy court suggests that the motion to dismiss could also have been granted because Plaintiff had not sufficiently alleged causation.  (AA 1243.)  This argument fails on its merits.  And it never should have been considered in the first instance.

To state a negligence claim Plaintiff must allege: (1) PG&E was negligent; (2) Plaintiff was harmed; and (3) PG&E's negligence was a substantial factor in

causing Plaintiff's harm.  CACI 400.  There is no dispute that the Complaint satisfies the first two elements.

The third element is also satisfied.  "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor.  It does not have to be the only cause of the harm."  CACI 430.  Further, "A person's negligence may combine with another factor to cause harm . . . . [Defendant] cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing [plaintiff]'s harm."  CACI 431; *Uriell v. Regents of Univ. of California*, 234 Cal. App. 4th 735, 746–47 (2015).  "Direct proof of every link in the chain of causation . . . is not required."  *City of Modesto*, 19 Cal. App. 5th at 156.

The bankruptcy court appeared to mistakenly believe that PG&E's negligence maintenance of its power grid had to be the only cause of Plaintiff's injury or that the Court was free to imply other possible causes of Plaintiff's injury into Plaintiff's allegations.  (AA 1243.)  But that is wrong.  The bankruptcy court was required to accept Plaintiff's allegations as true on the motion to dismiss and construe them in the light most favorable to him.  *Lee*, 250 F.3d at 679.  To muse that they might not is well beyond the purview of the court's consideration of a Rule 12 motion.

The causal connection between PG&E's negligent maintenance of its grid is set forth in detail in the Complaint (AA 4 [Compl. ¶ 15 ("In extreme fire areas, PG&E also must ensure that its power lines can withstand winds of up to 92 miles per hour")]; AA 14 [¶ 66 (For the October 9 and 10 PSPSs, "there is no indication that it ever came close to the 92 miles per hour threshold established by CPUC General Order 95)]; AA 16 [¶ 78 (for the November 20 PSPS "winds did not approach the 92-mph threshold")].  Judge Alsup's recent Probation Order attempting to further reign in PG&E's abuses further supports the causal connection.  (*See supra,* at § IV.A.1.)[6]

The court's task "is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed."  *Id.* at 772 (emphasis in original, internal quotation omitted).  "[F]oreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical

---

[6] Nor do the policy considerations attendant with proximate cause favor insulating PG&E from liability for its negligence.  *Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 779 (2011) ("[T]he question of 'the closeness of the connection between the defendant's conduct and the injury suffered' [citation] is strongly related to the question of foreseeability itself.")

conduct." *Bigbee v. Pac. Tel. & Tel. Co.*, 34 Cal. 3d 49, 57 (1983) (internal quotation marks omitted).

Plaintiff's damages were certainly a foreseeable consequence of PG&E's failure to maintain its power grid safely. PG&E should have anticipated that if they failed to maintain their grid to stand up to conditions that regularly affect that grid, they would either: (1) cause fires; or (2) cause damages to customers by shutting off power.[7]

In any case, the bankruptcy court should never have considered PG&E's improperly raised causation argument. *See U.S. ex rel. Giles*, 191 F. Supp. 2d at 1127 ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers."); *see also State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) ("[Parties] cannot

---

[7] In its opening brief below, PG&E argued that the negligence claim should be dismissed because of the economic loss rule and because the allegations do not support emotional distress damages. PG&E did not make those arguments in reply or at the hearing and appears to have abandoned them. In any case, the economic loss rule does not apply to services, only goods. *Ladore v. Sony Computer Entm't Am., LLC*, 75 F. Supp. 3d 1065, 1075–76 (N.D. Cal. 2014). And the Complaint pleads facts sufficient to make out a direct victim claim (AA 3-5 [detailing PG&E's duty to its customers]). *See* § 451 (PG&E has pre-existing relationship with its customers and duty to furnish and maintain "adequate, efficient, just, and reasonable service."); *Langley v. Pac. Gas & Elec. Co.*, 41 Cal. 2d 655, 662 (1953) ("By undertaking to supply electricity to plaintiff, defendant obligated itself to exercise reasonable care toward him, and failure to exercise such care has the characteristics of both a breach of contract and a tort.").

raise a new issue for the first time in their reply briefs." (citations omitted)); *Dytch v. Yoon*, No. C-10-02915-MEJ, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011) ("Defendant's argument . . . was raised for the first time her reply brief.  As a result, it would be improper for the Court to consider it.").[8]

The bankruptcy court's causation *dicta* was wrong and it was legal error for the court to even consider that argument.  This Court may not rely on it as a basis to affirm.

### D.    The Bankruptcy Court Abused its Discretion by Failing to Grant Plaintiff Leave to Amend the Complaint

The bankruptcy court abused its discretion when it decided not to permit Plaintiff leave to amend.  *Eminence Capital,* 316 F.3d at 1053 (district court abused its discretion by denying plaintiffs leave to amend where allegations were not frivolous, plaintiffs' allegations were in good faith, and it appeared plaintiffs had reasonable chance of successfully stating claim if given another opportunity). The bankruptcy court did not address the issue in its decision and did not even evaluate whether Plaintiff could amend to fix what it perceived to be fatal

---

[8] PG&E's argument that it only realized Plaintiff alleged negligence based on its negligent maintenance of its power grid via Plaintiff's opposition, not his Complaint is absurd.  The second paragraph of the Complaint put PG&E on notice of Plaintiff's position: "The necessity for the outages was caused by PG&E's own negligence in failing over many years, to properly maintain or replace old transmission lines, leaving them vulnerable to failing and sparking deadly wildfires."  (AA 2.)

deficiencies.  While Plaintiff strongly disputes that the operative complaint is deficient, there is no doubt Plaintiff could amend the Complaint to address the bankruptcy court's concerns if need be.

The CPUC conceded that Plaintiff could amend to state a claim that it believed would not be preempted: "I would think there could be a set of circumstances with specific shutdowns and specific power lines, in which you might have a negligence claim that could work."  (AA 1197-98 [Trans. 19:23-20:1].)  If more specific allegations concerning the PSPSs and the specific power lines is what is needed, Plaintiff should have been given the opportunity to allege those facts.  PG&E's representation to the CPUC that "the majority of transmission lines within the potential PSPS scope" are healthy and present a "low wildfire risk" certainly implies that some were not and caused the need for the PSPSs.  (*See supra*, at § IV.B.4.)  Plaintiff should have been given the chance to discover those details if he was required to plead them.

Judge Alsup's recent order likewise demonstrates that Plaintiff is capable of clearly drawing that connection for the court.  (AA 1271-83.)  For instance, the thousands of hazardous limbs and trees across PG&E's power grid in 2019 and the "defective and worn-out hardware" of its transmission towers caused a heighted risk of fire necessitating PSPSs which would not exist if PG&E had properly,

inspected, trimmed vegetation and trees around, and updated its grid as it was supposed to.  (AA 1276-81.)

### E.    PG&E's Alternative Tariff 14 and Motion to Strike Class Claims Arguments Were Properly Rejected

While the bankruptcy court did not address PG&E's argument that Tariff Rule 14 dictates dismissal under Rule 12(b)(6) or that Plaintiff's class claims should be struck, for the reasons set forth in Plaintiff's opposition to those motions, both should be rejected.  *See* AA 1015-20 [Tariff Rule 14]; AA 1020-24 [Motion to Strike].)

The bankruptcy court rightfully failed to even address PG&E's frivolous Tariff Rule 14 argument.  Tariff Rule 14[9] was approved in 1997 in connection with the energy grid deregulation of the 1990s which led to blackouts caused by market forces and is "wholly unrelated" to PSPS liability.[10] (AA 153.)

---

[9] As part of its regulatory authority, the CPUC may require utilities to file "tariffs" which contain "rules, contracts, privileges, and facilities which in any manner affect or relate to rates, tolls, rentals, classifications, or services." *Waters v. Pac. Tel. Co.*, 12 Cal. 3d 1, 6 (1974) (quoting § 489).  "If approved by the CPUC, such rules have the effect of law." *Tesoro*, 146 F. Supp. 3d at 1176.  PG&E's Tariff Rule 14 is one such rule.  But it does not apply to limit PG&E's liability in this case.

[10] In short, the output of energy was no longer dependent on PG&E alone, but other participants as well.  It therefore makes sense that PG&E would want to call out (and the CPUC would approve) that, barring its own negligence, PG&E may interrupt its service deliveries to its customers and electric service providers (ESPs) for safety reasons.  It does not, however, make sense that the CPUC would allow PG&E to insulate itself from liability for its own negligence simply because ESPs were given direct access to their power supply to compete with them.

Tariff Rule 14 generally provides some immunity for PG&E from liability for power outages, but only where it exercises "reasonable diligence and care," which it did not do here.

*Tesoro*, 146 F. Supp. 3d 1170 is well-reasoned, directly on point, and holds that Tariff Rule 14 does not insulate PG&E from liability.  Together with the history and context of Tariff Rule 14, *Tesoro* dictates that PG&E's Tariff Rule 14 did not provide the bankruptcy court an alternate basis to dismiss this case.

PG&E's alternative motion to strike class claims failed to assert any legitimate basis to support striking the class claims, was premature in that it asked the court to rule on matters properly considered at class certification after discovery, and was otherwise meritless because Plaintiff's class allegations were proper.

## VII.  CONCLUSION

For all the foregoing reasons, the Court should reverse the bankruptcy court's Decision and Order and remand for further proceedings.

Dated:  June 5, 2020          PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP


By: /s/ Nicholas A. Carlin
          Nicholas A. Carlin
          Brian S. Conlon



HAUSFELD LLP


By: /s/ Bonny E. Sweeney
          Bonny E. Sweeney
          Seth R. Gassman

          Attorneys for Plaintiff/Appellant

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. Bankr. P. 8015(a)(7), the undersigned certifies that Appellant's Principal Brief complies with the type-volume limitation and that the Appellant's Principal Brief contains 9,234 words (excluding the cover page, tables, signature blocks and required certificates) as counted by the computer program used to prepare the Appellant's Principal Brief.

Dated: June 5, 2020          PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP


                             By: /s/ Brian S. Conlon
                                 Brian S. Conlon

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2020, I electronically filed APPELLANT'S PRINCIPAL BRIEF with the Clerk of the Court of the United States District Court, Northern District of California by using the CM/ECF system.

I certify that all parties of record to this appeal either are registered CM/ECF users, have registered for electronic notice, or have consented in writing to electronic service, and that service will be accomplished through the CM/ECF system.

The parties of record who are being served through CM/ECF system are as follows:

Tobias S. Keller (tkeller@kbkllp.com)
Peter J. Benvenutti (pbenvenutti@kbkllp.com)
Jane Kim (jkim@kbkllp.com)
Keller Benvenutti Kim LLP
650 California Street, Suite 1900
San Francisco, CA  94108
Telephone:  415-496-6723

Stephen Karotkin (Stephen.karotkin@weil.com)
Theodore E. Tsekerides (theodore.tsekerides@weil.com)
Jessica Liou (Jessica.liou@weil.com)
Matthew Goren (matthew.goren @weil.com)
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone:  212-310-8000

Paul H. Zumbro (pzumbro@cravath.com)
Kevin J. Orsini (korsini@cravath.com)
Omid H. Nasab (onasab@cravath.com)
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019
Telephone:  212-474-1000

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  June 5, 2020

ROSEMARY A. COMISKY CULIVER