UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GANTNER,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>PG&E CORPORATION, et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-02584-HSG<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S DISMISSAL ORDER**<br><br>Re: Dkt. No. 7 |

Pending before the Court is Appellant Anthony Gantner's ("Appellant") appeal of the Bankruptcy Court's March 10, 2020 order that dismissed his class action complaint. Dkt. No. 7 ("Appellant Brief") and Dkt. No. 9 ("Reply"). Appellees PG&E Corporation and Pacific Gas and Electric Company (collectively, "Debtors") moved to dismiss Appellant's complaint in the Bankruptcy Court and oppose the current appeal. Dkt. No. 8 ("Opposition"). For the following reasons, the Court **AFFIRMS** the Bankruptcy Court's dismissal of Appellant's complaint.

I.  **BACKGROUND**

　　A.  **PG&E's Bankruptcy and Chapter 11 Plan**

On January 29, 2019, the Debtors commenced voluntary cases for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California ("Bankruptcy Court"). Significantly, the Debtors needed to propose a plan of reorganization that satisfied the requirements of A.B. 1054, including its June 30, 2020 deadline for plan confirmation. In light of the "increased risk of catastrophic wildfires," A.B. 1054 created the "Go-Forward Wildfire Fund" as a multi-billion dollar safety net to compensate future victims of public utility fires and thereby "reduce the costs to ratepayers in addressing utility-caused catastrophic wildfires," support "the credit worthiness of electrical

corporations," like the Debtors, and provide "a mechanism to attract capital for investment in safe, clean, and reliable power for California at a reasonable cost to ratepayers." A.B. 1054 § 1(a). For the Debtors to qualify for the Go-Forward Wildfire Fund, however, A.B. 1054 required, among other things, the Debtors to obtain an order from the Bankruptcy Court confirming a plan of reorganization by June 30, 2020. *See* A.B. 1054 § 16, ch. 3, 3292(b). After more than sixteen months of negotiations among a variety of stakeholders, and following confirmation hearings that spanned several weeks, the Debtors' Plan of Reorganization dated June 19, 2020 ("Plan")[1] was confirmed by the Bankruptcy Court on June 20, 2020 and became effective on July 1, 2020 ("Effective Date").

### B. Appellant's Claim

On December 19, 2019, Appellant filed a class action complaint and initiated an adversary proceeding before the Bankruptcy Court. BR Dkt. No. 1 ("Compl.").[2] Appellant's single negligence claim arises from certain planned power outages, known as public safety power shutoff ("PSPS") events. *Id.* He seeks damages for losses, such as loss of habitability, loss of food items, and loss of productivity, that he and putative class members incurred as a result of five post-petition PSPS events that took place in October and November 2019. *Id.* ¶¶ 3, 85; Dkt. No. 1-5 (Bankruptcy Court's March 30, 2020 Memorandum Decision ("Mem. Decision")) at 2. The proposed class is defined as "All California residents and business owners who had their power shutoff [sic] by PG&E during the October 9, October 23, October 26, October 28, or November 20, 2019 Outages and any subsequent voluntary Outages PG&E imposes on its customers during the course of litigation." Compl. ¶ 85.

Debtors moved to dismiss Appellant's complaint, BR Dkt. No. 7, and the Bankruptcy Court granted the motion without leave to amend, finding that Appellant's claim is preempted by California Public Utilities Code § 1759 ("§ 1759"). Mem. Decision at 7-11. This appeal

---

[1] Capitalized terms not otherwise defined in this order have the meanings ascribed to them in the Plan.
[2] "BR Dkt. No." references are to the Bankruptcy Court's docket, Case No. 19-30088 (DM), Adversary Proceeding Case No. 19-03061 (Bankr. N.D. Cal.). "Dkt. No." references are to this Court's docket.

2

followed.

## II. LEGAL STANDARD

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. 28 U.S.C. § 158. A district court reviews a bankruptcy court's decision by applying the same standard of review used by circuit courts when reviewing district court decisions. *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009). The district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In a case requiring a federal court to apply California law, the court 'must apply the law as it believes the California Supreme Court would apply it.'" *Kairy v. SuperShuttle Int'l*, 660 F.3d 1146, 1150 (9th Cir. 2011). The bankruptcy court's decision to dismiss a complaint without leave to amend is reviewed for abuse of discretion. *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

## III. DISCUSSION

The question presented by this appeal is whether Appellant's negligence claim, if allowed to proceed, would impermissibly hinder or interfere with the supervisory and regulatory policies of the California Public Utilities Commission ("CPUC") in violation of California Public Utilities Code § 1759. Appellant argues that California Public Utilities Code § 2106 makes Debtors liable for damage caused by their negligence, and that § 1759 does not preempt his negligence claim. App. Br. at 3-4. Debtors respond that the Bankruptcy Court properly dismissed Appellant's complaint on the ground that Appellant's action would interfere with the CPUC's regulatory authority to authorize PSPS events, contrary to § 1759. Opp. at 9. The Court reviews this

1  question de novo. *See Kairy*, 660 F.3d at 1150.

2  **A.   Section 1759 And The *Covalt* Test**

3  Section 1759 provides that:

> No court of this state, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, as provided by law and the rules of court.

Cal. Pub. Util. Code § 1759.

In effect, § 1759 "declares that no court except [the California] Supreme Court has jurisdiction to review any order or decision of the Public Utilities Commission (hereafter the commission) or to interfere with the commission in the performance of its duties." *San Diego Gas & Electric Co. v. Superior Court*, 13 Cal.4th 893, 902 (1996) ("*Covalt*"). At the same time, § 2106 "authorizes an action in superior court for damages caused by any unlawful act of a public utility." *Id.*[3]

"The California Supreme Court has on a number of occasions addressed the tension between Public Utilities Code § 1759 and the public and private remedies provided for in Chapter 11 of that Code, and has consistently applied a three-part test to resolve any conflict." *Kairy*, 660

---

[3] Section 2106 provides that:

> Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was willful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person. No recovery as provided in this section shall in any manner affect a recovery by the State of the penalties provided in this part or the exercise by the commission of its power to punish for contempt.

Cal. Pub. Util. Code § 2106.

4

F.3d at 1150.  In *Covalt*, the California Supreme Court articulated this three-part test in an effort "to resolve conflicts between actions brought against a public utility under Public Utilities Code § 2106 and the jurisdiction-stripping provision in § 1759." *Kairy*, 660 F.3d at 1149.  In doing so, the California Supreme Court reaffirmed the "the primacy of section 1759 and the correspondingly limited role of section 2106." *Covalt*, 13 Cal.4th at 917.  "[A]n action for damages against a public utility pursuant to section 2106 is barred by section 1759 not only when an award of damages would directly contravene a specific order or decision of the commission, i.e., when it would 'reverse, correct, or annul' that order or decision, but also when an award of damages would simply have the effect of undermining a general supervisory or regulatory policy of the commission, i.e., when it would 'hinder' or 'frustrate' or 'interfere with' or 'obstruct' that policy." *Id.* at 918.  Accordingly, in deciding whether an action is barred by § 1759, a court must ask: "(1) whether the PUC had the authority to adopt a regulatory policy on the subject matter of the litigation; (2) whether the PUC had exercised that authority; and (3) whether action in the case before the court would hinder or interfere with the PUC's exercise of regulatory authority." *Kairy*, 660 F.3d at 1150.[4]

### B. The CPUC Had The Authority To Regulate PSPS Events And The CPUC Exercised that Authority

The California Public Utilities Code gives electric utilities regulated by the CPUC authority to shut off electric power in order to protect public safety.  *See* Cal. Pub. Util. Code §§ 399.2(a), 451.  In 2018, the CPUC promulgated de-energization guidelines that apply to all investor-owned utilities, including Debtors.  *See* Resolution Extending De-Energization Reasonableness, Notification, Mitigation & Reporting Requirements in Decision 12-04-024 to All Elec. Inv. Owned Utilities., No. ESRB-8, 2018 WL 3584003, at *1 (July 12, 2018).  "The decision to shut off power may be reviewed by the [CPUC] pursuant to its broad jurisdiction over public safety and utility operations." *Id.* at *8.  Through its rulemaking authority, the CPUC also

---

[4] Appellant argues that the "bankruptcy court failed to apply the *Covalt* test *at all*."  App. Br. At 23 (emphasis in original).  This is incorrect.  The Bankruptcy Court cited *Covalt* and applied the three-part test.  Mem. Decision at 5-10.

established guidelines and protocols that govern the decision by a utility to conduct a PSPS event. *See* Order Instituting Rulemaking to Examine Electric Utility De-Energization of Power Lines in Dangerous Conditions, 2018 WL 6830158 (Cal. P.U.C. Dec. 13, 2018). This rulemaking reaffirmed the authority of the CPUC to review for reasonableness any decision by a utility to conduct a PSPS event. *Id.*

In September 2018, the California Legislature codified the obligation of California utilities to prepare and submit "Wildfire Mitigation Plans" to the CPUC. *See* Cal. Pub. Util. Code § 8386(b). One of the statutory requirements for the Wildfire Mitigation Plans is the establishment of "[p]rotocols for . . . deenergizing portions of the electrical distribution system that consider the associated impacts on public safety." Cal. Pub. Util. Code § 8386(c)(6).

As discussed by the Bankruptcy Court, in February 2019, Debtors submitted their 2019 Wildfire Safety Plan, which included factors to consider when considering a PSPS event. Mem. Decision at 3. This plan was ultimately approved by the CPUC. *Id.* In October and November of 2019, Debtors conducted the PSPS events that form the basis for Appellant's complaint. *Id.* On November 12, 2019, the CPUC ordered Debtors to show cause why they should not be sanctioned for failure to properly communicate with their customers during these PSPS events. *Id.* The CPUC also instituted a broader investigation to determine whether California's utilities, including Debtors, prioritized safety and complied with CPUC regulations and requirements with respect to the PSPC events in late 2019. *Id.*; Order Instituting Investigation on the Commission's Own Motion on the Late 2019 Public Safety Power Shutoff Events, 2019 WL 6179011 (Cal. P.U.C. Nov. 13, 2019). Accordingly, the Court finds that the CPUC had the authority to regulate the PSPS events challenged by Appellants and that the CPUC exercised, and continues to exercise, that authority.[5]

//

//

---

[5] The parties agree that the first two parts of the *Covalt* test are satisfied with regard to the PSPS events at issue. App. Br. at 22 (stating that "Plaintiff does not dispute that the first and second parts of the *Covalt* test are satisfied"); Opp. at 10.

6

### C. Allowing Appellant's Claim To Proceed Would Interfere With The CPUC's Regulatory Authority Over PSPS Events

The third and most important part of the *Covalt* test is whether Plaintiff's state law negligence claim would "hinder or interfere with" CPUC's exercise of regulatory authority. Appellant contends that rather than interfere with CPUC's regulatory authority, his negligence suit is in aid of, and complements, CPUC's jurisdiction, relying on a standard articulated in *Hartwell Corp. v. Superior Court (Santamaria)*, 27 Cal. 4th 256 (2002). App. Br. At 29-32.

In *Hartwell*, the California Supreme Court applied the *Covalt* test and explained the general principle that:

> [A]n award of damages is barred by section 1759 if it would be contrary to a policy adopted by the [CPUC] and would interfere with its regulation of public utilities. On the other hand, superior courts are not precluded from acting in aid of, rather than in derogation of, the [CPUC's] jurisdiction.

27 Cal. 4th at 275 (citations omitted). The court reemphasized the holding in *Covalt* that § 1759 bars suits "when the relief sought would have interfered with a broad and continuing supervisory or regulatory program of the commission." *Id.*

In evaluating the potential for Appellant's claim to interfere with the CPUC's regulatory authority over PSPS events, it is significant that Appellant is not suing Debtors for improperly deciding to implement the PSPS events, or even for negligence in how Debtors implemented the PSPS events. *See* Reply at 4 ("Plaintiff has said—in the Complaint, in the briefing and argument below, and now in this appeal—that he does not challenge the CPUC's decision to approve the PSPSs, nor does he challenge the way PG&E implemented those shutoffs, in accordance with the regulatory protocol for doing so."); Br. Dkt. No. 16 Appellant's Opposition to Debtor's Motion to Dismiss at 2 ("The Complaint does not allege that the PSPSs were not necessary and appropriate, or that CPUC's approval of its Wildfire Safety Plan was improper, only that the PSPSs would not have been necessary in the first place had PG&E not been negligent.").

Under Appellant's theory, Debtors could implement a PSPS event that is required by statute and CPUC regulations—and do so in full accordance with the requirements of CPUC regulations and the CPUC-approved Wildfire Safety Plan—yet still be liable because of the underlying conditions necessitating the PSPS event. In Appellant's view, such liability would not

interfere with the decision to implement a legally-mandated PSPS event because "[i]f a PSPS is necessary, surely PG&E will not risk causing more deadly wildfires and incurring tens of billions more in damages to wildfire victims, just to avoid liability here." Reply at 7-8. The Court disagrees.

As discussed above, the CPUC has promulgated specific guidelines concerning when and how to implement PSPS events, and the CPUC has approved Debtor's 2019 Wildfire Safety Plan. Appellant does not allege any violations by Debtors of those guidelines or the safety plan. This case is thus distinguishable from the cases cited by Appellant in which plaintiffs sought damages arising from alleged failures to comply with CPUC standards. *See, e.g.*, *PegaStaff v. Pacific Gas & Electric Co.*, 239 Cal. App. 4th 1303, 1326 (2015). As this Court has previously summarized, "[t]ogether, *Hartwell*, *Vila*, *Cundiff*, *Cellular Plus*, and *Nwabueze* make clear that California law permits courts to entertain actions for both damages and injunctive relief against regulated utilities where those actions seek to enforce, rather than challenge, obligations created by CPUC regulations." *North Star Gas Co. v. Pacific Gas & Electric Co.*, 2016 WL 5358590 at *13 (N.D. Cal. Sept. 26, 2016). Here, Appellant's action seeks to impose liability for complying with PSPS obligations created by CPUC regulations.

CPUC's regulatory policies, as reflected in those guidelines and the approval of the Wildfire Safety Plan, authorize Debtors to decide that a PSPS is warranted under certain circumstances. CPUC has also exercised continuing investigatory authority over Debtors' PSPS events. *See* Order Instituting Investigation on the Commission's Own Motion on the Late 2019 Public Safety Power Shutoff Events, 2019 WL 6179011 (Cal. P.U.C. Nov. 13, 2019). Imposing liability on Debtors for implementing CPUC-approved PSPS events would force Debtors to choose between incurring potentially limitless negligence liability and protecting public safety in the manner dictated by the appropriate regulatory authority: CPUC.[6] Rather than acting in aid of CPUC's authority to regulate PSPS events, Appellant's theory of liability would create a powerful incentive for Debtors to avoid PSPS events, even if the PSPS events are warranted under CPUC

---

[6] Appellant's argument that negligence liability would not affect Debtors' PSPS decision-making is belied by his damages claim of $2.5 billion for five PSPS events. *See* Compl. ¶ 106.

regulations.

As correctly noted by the Bankruptcy Court, "before the wildfires in October and November 2019, [CPUC] had already exercised its authority to regulate the PSPSs by adopting its guidelines governing the circumstances in which an investor-owned utility can conduct them." Mem. Decision at 9-10. "The CPUC continues to exercise that authority through ongoing rulemaking and investigations." *Id.* Under California law, it is the job of CPUC to balance the costs and benefits of PSPS events and regulate them accordingly. And it is not the job of the courts to regulate PSPS events through ad hoc imposition of negligence liability. As articulated by CPUC in its *amicus curiae* brief in the Bankruptcy Court:

> The Complaint appears to rest on the theory that in light of the Utility's alleged generalized failure to maintain its infrastructure, any decision by the Utility to conduct a public safety power shutoff— in the recent past or future—necessarily gives rise to a claim against the Utility for negligence. Judicial adoption of such a theory would hinder and interfere with the Commission's considered policy to allow utilities to conduct public safety power shutoffs in the interests of public safety pursuant to guidelines established by the Commission.

Br. Dkt. No. 19 at 7-8.[7]

Accordingly, the Court finds that Appellant's claim for damages caused by PSPS events would interfere with CPUC's PSPS policies and its "broad and continuing supervisory [and] regulatory program." *See Covalt*, 13 Cal. 4th at 919.

---

[7] The Ninth Circuit has explained that the CPUC's position regarding the applicability of § 1759 should be considered persuasive authority:

> California courts have made reference to the PUC's amicus briefs filed in § 1759 cases for aid in assessing the third question in the *Covalt* analysis. Moreover . . . the California Supreme Court suggested that, in future cases, a court considering whether a civil action was barred by § 1759 "may deem it appropriate to solicit the views of the PUC regarding whether the action is likely to interfere with the PUC's performance of its duties." The California courts' reliance on the PUC's view of the third *Covalt* inquiry means that, in this case, the PUC's assertion…should be given persuasive effect in deciding what § 5.03 requires.

*Kairy*, 660 F.3d at 1154 (internal citations omitted).

## IV. THE BANKRUPTCY COURT DID NOT ERR IN DISMISSING WITHOUT LEAVE TO AMEND.

"Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). Here, Appellant's entire negligence theory runs afoul of § 1759's jurisdictional limitations, and Appellant would be unable to amend without contradicting his initial complaint. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (explaining that "a plaintiff can…plead himself out of a claim by including unnecessary details contrary to his claims."). Accordingly, the Bankruptcy Court did not abuse its discretion in dismissing Appellant's complaint without leave to amend.

## V. CONCLUSION

The Bankruptcy Court's order dismissing Appellant's complaint is **AFFIRMED**. The Clerk is directed to terminate this appeal and close the case.

**IT IS SO ORDERED.**

Dated: 3/26/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge